UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

MARCOS RODRIGUEZ,

        CASE NUMBER 16-CV-

      Plaintiff,

-v-

GARDA CL ATLANTIC, INC.,

      Defendant.

---------------------------------------------------------X

      Plaintiff MARCOS RODRIGUEZ, by his attorneys, Beranbaum Menken LLP, complaining of Defendant Garda CL Atlantic, Inc. ("Garda"), alleges as follows:

## NATURE OF ACTION

1.    This action is brought to remedy claims of employment discrimination under the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), and the New York City Human Rights Law, New York City Administrative Code § 8-101 *et. seq.* ("NYCHRL") .

2.    Plaintiff seeks injunctive and declaratory relief, economic, compensatory, and punitive damages, attorneys' fees and all other appropriate relief pursuant to federal and New York City law.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4.    As Defendant maintains offices in and regularly does business within the Eastern District

of New York, and the circumstances giving rise to this action occurred within the Eastern District of New York, venue is proper in this District pursuant to 28 U.S.C.§ 1391(b).

5.      On December 15, 2014, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), complaining of the unlawful discriminatory acts alleged herein. At the Plaintiff's request, a Notice of Right to Sue was mailed to Plaintiff on April 11, 2016, less than 90 days from the filing of the herein Complaint.

## PARTIES

6.      Plaintiff is a resident of Brooklyn, New York, and, at all times relevant to this suit, was an "employee" of Defendant as that term is defined under the ADA, 42 U.S.C. § 12111(4) and the NYCHRL, § 8-102.  At all times relevant to this Complaint, he was a "qualified individual" pursuant to the ADA, 42 U.S.C. § 1211(8).

7.      Defendant Garda is a Delaware corporation licensed to do business in the State of New York, with its principal place of business in Boca Raton, Florida.

8.      Garda is in the business of providing guard and armored car services in and out of the State of New York.  It has over 200 offices worldwide and employs thousands of individuals.  At all times relevant to this suit, Garda employed  was a "covered entity" as that term is defined by the ADA, 42 U.S.C. § 12111(2) and Plaintiff's "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A), and the NYCHRL, § 8-101.

## FACTUAL ALLEGATIONS

9.      After 20 years of service to Garda, Plaintiff was fired on August 20, 2014, three days after returning to work from a leave he had taken to undergo gastric bypass surgery.

10.     Plaintiff was fired because he took that leave, and because Garda perceived him to be disabled because of his then-morbid obesity.

11. Plaintiff began work with a company known as CDC Inc. in July 1994. In 1997, Garda bought CDC, and at that time Plaintiff was working as Night Operations Manager in the Long Island City, New York facility. He supervised approximately 200 employees in Garda's armored car and cash logistics business.

12. Plaintiff's job performance was always satisfactory, and he received regular raises.

13. In April of 2014, Garda restructured the Plaintiff's department, and his longtime branch manager, Stanley Matthews, was transferred. Mr. Matthews' replacement, Sam LaRocca, was a new hire from outside of Garda.

14. Without any explanation, Mr. LaRocca immediately demoted Plaintiff to the position of ATM supervisor, which required Mr. Rodriguez to change from the night shift, where he had worked his entire career, to the day shift. In light of subsequent events, this demotion was intended to induce Mr. Rodriguez to quit.

15. Despite the magnitude of this change, Plaintiff's job performance in his new position was always satisfactory.

16. Shortly after the demotion, Plaintiff, who suffered from morbid obesity with attendant edema and related health problems, took the advice of his doctor and decided to undergo gastric bypass surgery. Plaintiff was told by Garda's benefits department that Garda's health insurance would pay for the procedure.

17. That surgery was scheduled for August 4, 2014. Plaintiff informed his direct supervisor, Charles Puccio, of the scheduled surgery. Mr. Puccio told Plaintiff to make a request for Family and Medical Leave Act (FMLA) leave and to first use up his vacation time.

18. Plaintiff made his FMLA leave request on July 14, 2014. Mr. Rodriguez anticipated a two week recovery period, and a return to work on August 18, 2014, and indicated as such on

Garda's leave request form.

19.     Plaintiff had enough vacation time to be paid for the two weeks he was to be out, and his leave request form indicated the need for leave was for "surgery/vacation."

20.     Plaintiff worked his normal schedule on July 31, 2014, and left work that day expecting to undergo the surgery on August 4, the following Monday.  Mr. Puccio was fully aware of Mr. Rodriguez's plan to take time off and approved of it.  Garda had also acknowledged receipt of Plaintiff' leave request, and approved it in a notice dated July 18, 2014.

21.     Unfortunately, on August 3, 2014, Plaintiff learned that Garda's insurance company would not pay for his surgery.  Plaintiff spent the next 2-3 days making telephone calls to the benefits department and the hospital, trying to arrange for payment of the surgery, but without success.

22.     On August 7, 2014, Plaintiff called Mr. Puccio and informed him of the cancelled surgery, and asked him if he could return to work on August 11, 2014, so that Plaintiff could save his vacation time.

23.     Mr. Puccio told Plaintiff that he would call him back.  Plaintiff did not hear back from him, however, and so Mr. Rodriguez decided to make the best of a bad situation and left on August 8, 2014 for a trip out of town with his family.

24.     Plaintiff returned to work, as scheduled, on August 18, 2014.

25.     Plaintiff worked without incident until August 20, 2014, when he was fired by Mr. LaRocca, who told him that the reason was "job abandonment."

26.     The reason Garda gave for firing Plaintiff was incredible and was pretext for unlawful discrimination.  It is preposterous to say Plaintiff abandoned his job, when he had in fact returned to work after scheduled, approved time off, and had been back working for three days.

27. In fact, Plaintiff was fired out of a desire on Garda's part to not have to deal with an employee needing medical leave and possible job accommodations due to his condition, as well as the incorrect perception that he was limited in performing his job because of his obesity.

28. Plaintiff was thus fired by Garda because of his disability, or Garda's perception that he was disabled, in violation of the ADA and the NYCHRL.

## FIRST CAUSE OF ACTION: ADA

29. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

30. Garda regarded Plaintiff as disabled by his morbid obesity and related health problems within the meaning of the ADA.  Plaintiff's conditions were not transitory in nature.

31. Plaintiff was a qualified individual in that he was qualified for and able to perform his job.  Aside from the leave time required to undergo gastric bypass surgery, he was able to perform the essential functions of his job without any accommodations.

32. Defendant violated the ADA by terminating Plaintiff's employment because it regarded him as disabled.

33. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits.

34. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

35. Defendant's unlawful discriminatory actions constitute willful violations of the ADA for

which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION: NYCHRL

36. Plaintiff repeats and realleges each and every allegation contained this Complaint with the same force and effect as if fully set forth herein.

37. Garda regarded Plaintiff as disabled within the meaning of the NYCHRL.

38. Plaintiff was a qualified individual in that he was qualified for and able to perform his job. Aside from the leave time required to undergo gastric bypass surgery, he was able to perform the essential functions of his job without any accommodations.

39. Defendant violated the NYCHRL by terminating Plaintiff's employment because it regarded him as disabled.

40. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits.

41. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering. o drive a vehicle to a client's office or work was not an essential function of Plaintiff's job. compensation and benefits.

42. Defendant's unlawful discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a. Declaring the acts and practices complained of herein to be violations of the ADA and the NYCHRL;

b. Enjoining and permanently restraining these violations of law;

c. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d. Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's unlawful conduct, and making him whole for all earnings and other benefits he would have received but for Defendant's unlawful conduct, including but not limited to wages, bonuses, other lost benefits, loss of good will, and interest thereon;

e. Directing Defendant to pay Plaintiff front pay, to compensate him for all monetary and/or economic damages, including but not limited to the loss of past and future income, wages, compensation, seniority and other benefits of employment;

f. Directing Defendant to pay Plaintiff compensatory damages, including damages for mental anguish, denial of life's pleasures, pain and suffering and humiliation; liquidated damages; punitive damages and interest thereon;

g. Directing Defendant to pay Plaintiff an award of punitive damages;

h. Awarding Plaintiff the costs of this action together with reasonable attorney fees;

i. Granting such other relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated: New York, New York
July 6, 2016

                                      Respectfully Submitted,

                                      BERANBAUM MENKEN LLP

By: _____/s/_____
Jason J. Rozger
80 Pine Street, 33rd Floor
New York, NY 10005
Ph: (212) 509-1616
Fax: (212) 509-8088